**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ROBERTA KLINE, Case No.:

Plaintiff,

vs.

CELEBRITY CRUISES, INC.,

Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff ROBERTA KLINE (hereinafter "Plaintiff"), by and through her undersigned counsel, and hereby sues Defendant CELEBRITY CRUISES, INC. (hereinafter "Defendant") and alleges:

## GENERAL ALLEGATIONS

### The Parties, Jurisdiction, and Venue

1. This is an action for damages exceeding Seventy-Five Thousand ($75,000.00) Dollars.

2. Plaintiff is a resident of the State of Florida and is *sui juris*.

3. Defendant is a for profit corporation, based in Miami, Florida, with its principal place of business located at 1050 Caribbean Way, Miami, FL 33132. Defendant is authorized to conduct and is conducting substantial business in the State of Florida. Defendant lists Bradley H. Stein as its registered agent, located at Defendant's principle place of business.

4. That this court has jurisdiction pursuant to 28 USC § 1333 and the General Maritime Laws of the United States.

5. Venue is proper in this Court because Defendant's principal place of business is within Miami-Dade County. A forum selection clause identifying this Court as the selected venue in the

event of litigation was entered into by both parties. Defendant may be served with this Complaint under Florida Statutes §§ 48.081, 48.091, 48.181, 607.1501 and/or 607.1507.

## Factual Background

6. Defendant, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the *Celebrity Constellation*. At all times material hereto, Defendant owned, operated, managed, maintained, and/or controlled the *Celebrity Constellation*, including but not limited to all activities, staff, crew and medical personnel on board.

7. On December 12, 2015, Plaintiff boarded the *Celebrity Constellation* for a cruise that would last six days and five nights.

8. Defendant issued Plaintiff a wheelchair to use while on board the *Celebrity Constellation*.

9. On December 13, 2015, the wheelchair's pedal suddenly and without warning fell, cutting Plaintiff's leg and causing her severe and painful injury.

10. Plaintiff presented to the medical staff provided by, and otherwise employed by, Defendant and on board the *Celebrity Constellation*, to be examined for the laceration. Defendant negligently discharged Plaintiff without continued monitoring or administration of proper medication despite Plaintiff's dangerously elevated blood pressure at the time and Plaintiff's hypertensive condition.

11. On the morning of December 14, 2015, Plaintiff returned to Defendant's medical personnel. Plaintiff's blood pressure remained elevated, she had a headache, and her right leg was swollen and bleeding from the laceration site. However, Defendant again negligently sent Plaintiff back to her room without continued medical monitoring or medical treatment.

12. That afternoon, Plaintiff again returned to the medical facility with continued headaches. By this time, Defendant noted that Plaintiff had "sky-high blood pressure," in addition to swollen ankles and feet.

13. Throughout that night, Plaintiff continued to experience elevated and erratic blood pressure, swelling of ankles and feet, and fatigue, and hypertensive crises. All the while, Defendant continued to fail to provide the proper medical care and administer the proper medication to Plaintiff in the proper dosages and time intervals considering her condition.

14. On December 15, 2015, Plaintiff was finally prepped for transport via ambulance to an intensive care unit in Cozumel, Mexico.

15. As a result of Defendant's failure to properly monitor and provide medical care to Plaintiff, Plaintiff suffered a frightening and violent Tonic-clonic seizure.

16. Plaintiff further suffered a hypertension emergency, with resultant heart and kidney failure as well as brain damage.

17. After spending two weeks in Cozumel, intubated almost the entire time, undergoing daily life and death medical procedures, Plaintiff was transported, intubated, by air ambulance back to Miami, Florida. Since that time, she has remained under the constant supervision and care of medical personnel.

18. As a result of the aforementioned, Plaintiff has continued to suffer severe and permanent injuries and pain, requiring hospitalization, full time medical care and nursing, and a completely altered way of life. Plaintiff has lost both physical and cognitive function. She has been unable to return home since the cruise and is no longer self-sufficient. She now requires full time, 24-hour, monitoring and nursing care for all daily life activities.

**COUNT I**
**(Negligence)**

Plaintiff readopts, re-alleges, and incorporates by reference all allegations previously stated in paragraphs 1 through 18 above as though alleged originally herein.

19. It was the duty of Defendant to exercise reasonable care under the circumstances. In light of Defendant's experience and familiarity with the demographics of the passengers on its cruises, and the types of injuries and illnesses that can happen to passengers on board, it was reasonably foreseeable to Defendant that passengers similar to Plaintiff would be on board and would require a properly functioning wheelchair and proper medical examination, evaluation and treatment.

20. On or about December 13, 2015, Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances. Plaintiff was injured due to the fault and/or negligence of Defendant, and/or its agents, servants, and/or employees as follows:

(a) Issuing Plaintiff a wheelchair that Defendant knew or should have known, through the exercise of reasonable care, inspection, and maintenance, that was defective and that should not have been in operation, and otherwise failing to inspect and maintain the wheelchair in a reasonable manner before issuing to Plaintiff;

(b) Failing to provide reasonably prompt, proper, and adequate medical care to Plaintiff while on board the vessel and being cared for by the vessel's medical personnel; and

(c) Failing to provide the proper medical equipment and medication on board in the event foreseeable emergency medical care was required.

21. As a result of the Defendant's negligence, Plaintiff sustained severe and permanent injuries, including physical pain, mental anguish, loss of enjoyment of life, disability,

disfigurement, aggravation of any previously existing conditions therefrom, incurred medical and travel expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap including but not limited to an inability to walk or use meaningful muscle control and loss of cognitive function. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

22. The conduct of Defendant and its agents/employees in the medical care administered to Plaintiff rises to the level gross negligence. Moreover, Defendant actively and knowingly participated in such conduct, the officers, directors or managers of Defendant knowingly condoned, ratified or consented to such conduct and/or Defendant conducted itself in a wanton or outrageous manner. Treatment of a hypertensive emergency via the administration of medications and patient monitoring carried out by Defendants agents/employees was careless and reckless. Defendant should be required to pay punitive damages as a deterrent to any such grossly negligent, wanton, and/or outrageous medical treatment being rendered to future passengers onboard its vessels.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## COUNT II

## (Negligent Medical Care and Treatment)

Plaintiff readopts, re-alleges, and incorporates by reference all allegations previously stated in paragraphs 1 through 18 above as though alleged originally herein.

23. That the Defendant owed a duty to Plaintiff to provide prompt and appropriate medical care following the laceration she suffered and her elevated blood pressure. That the Defendant, by and through the acts of its employees or agents, was negligent, in one or more of the following ways:

(a) in failing to properly assess and treat the condition of Plaintiff;

(b) in failing to provide the proper personnel to treat Plaintiff;

(c) in failing to timely evacuate the Plaintiff upon discovering her condition;

(d) in failing to timely diagnose and appropriately treat Plaintiff; and,

(e) in failing to implement and follow adequate emergency medicine policies and procedures.

24. That as a direct and proximate result of the negligence of the Defendant, as described above, the Plaintiff's condition deteriorated to the point that her blood pressure spiked to a life-threatening level, she lost consciousness, suffered a seizure, and ultimately had to be induced into a coma.

25. That had Plaintiff received the appropriate care and treatment, she would not have suffered a hypertensive emergency, seizures, kidney damage as well as the permanent disability and loss of bodily function that she continues to suffer today. Reasonable and proper intervention and treatment would have prevented Plaintiff's permanent and deteriorated condition.

26. That as a result of the negligence of the Defendant, as heretofore described, Plaintiff has become obligated to pay significant medical bills and other expenses.

27. As a result of the Defendant's negligence, Plaintiff sustained severe and permanent injuries, including physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical and

travel expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap including but not limited to an inability to walk or use meaningful muscle control and loss of cognitive function. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

28. The conduct of Defendant and its agents/employees in the medical care administered to Plaintiff rises to the level gross negligence. Moreover, Defendant actively and knowingly participated in such conduct, the officers, directors or managers of Defendant knowingly condoned, ratified or consented to such conduct and/or Defendant conducted itself in a wanton or outrageous manner. Treatment of a hypertensive emergency via the administration of medications and patient monitoring carried out by Defendants agents/employees was careless and reckless. Defendant should be required to pay punitive damages as a deterrent to any such grossly negligent, wanton, and/or outrageous medical treatment being rendered to future passengers onboard its vessels.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

**COUNT III**

**(Negligence Based Upon Agency and Apparent Agency)**

Plaintiff readopts, re-alleges, and incorporates by reference all allegations previously stated in paragraphs 1 through 18 above as though alleged originally herein.

29. That at all times material, Defendant held out its medical staff, including its doctors and nurses, as being its employees and agents who work in the Defendant's "medical center" on the vessel. All medical personnel onboard acted at all times as the actual agents and/or apparent agents of Defendant.

30. That Defendant promotes its medical staff and represents them as being its agents and/or employees through brochures, internet advertising, and on the vessel. Defendant held out its medical staff as being employees and/or its actual agents.

31. That Defendant promotes the idea that the medical staff who work in its "medical Centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care and there are a lot of retirement-aged passengers. Defendant manifested to Plaintiff in this case that its medical staff were acting as its employees and/or actual agents in various ways, including but not limited to the following:

(a) the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers;"

(b) that the "medical centers" are owned and operated by Defendant, which pays to stock the "medical centers" with all supplies, various medicines and equipment; and

(c) that the passenger is billed directly by Defendant for medical treatment aboard the ship.

32. That the medical staff in this case were given uniforms to wear which include name tags, and which have the Defendant's name and logo. Said uniforms were required by Defendant to be worn by the doctor and nurse.

33. That the doctor is considered to be an Officer on board the vessel and a member of the crew and is introduced to the passengers as one of the ship's Officers.That both the ship's doctor and the nurse were held out to the passengers by Defendant as being members of the ship's crew.

35. That the Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

36. That the cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

37. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

38. That the ship's physician and nurse provide services in the ship's "medical centers" and Plaintiff was required to go to the ship's medical center repeatedly to be seen for her injuries.

39. That at the time of Plaintiff's injury, she was seen and examined by the ship's nurse and/or physician.

40. That based on the foregoing, the Plaintiff believed, and was reasonable in her belief, that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendant, and was never given any reason to believe otherwise. That as a result of Plaintiff's reliance upon, and trust in, the medical staff provided by Defendant, the Plaintiff's medical condition was not properly and timely diagnosed and her condition deteriorated to the point that she went unconscious, suffered a seizure, and after being transferred into an intensive care unit ultimately had to be induced into a coma.

41. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

42. As a result of the Defendant's negligence, Plaintiff sustained severe and permanent injuries, including physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical and travel expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap including but not limited to an inability to walk or use meaningful muscle control and loss of cognitive function. The injuries are permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

43. The conduct of Defendant and its agents/employees in the medical care administered to Plaintiff rises to the level gross negligence. Moreover, Defendant actively and knowingly participated in such conduct, the officers, directors or managers of Defendant knowingly condoned, ratified or consented to such conduct and/or Defendant conducted itself in a wanton or outrageous manner. Treatment of a hypertensive emergency via the administration of medications and patient monitoring carried out by Defendants agents/employees was careless and reckless. Defendant should be required to pay punitive damages as a deterrent to any such grossly negligent, wanton, and/or outrageous medical treatment being rendered to future passengers onboard its vessels.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

**COUNT IV**

**(Negligent Hiring, Retention, and Training)**

Plaintiff readopts, re-alleges, and incorporates by reference all allegations previously stated in paragraphs 1 through 18 above as though alleged originally herein.

44. That it is foreseeable to the Defendant that passengers like the Plaintiff would have accidents on the cruise which would result in similar medical care being necessary.

45. That it is foreseeable that such injuries would occur and require proper examination, monitoring, treatment and/or evaluation, including appropriate triage in the event that the injury would require shore side examination, diagnostic testing, evaluation, and treatment.

46. That at all times material, Defendant owed a duty to use reasonable care in hiring and/or retention of all medical personnel, including the ship's doctor and nurse. Defendant had a duty to hire medical personnel who were adequately qualified, trained and experienced to work aboard ships and to conduct examinations and evaluations which would require emergency treatment aboard ships or which might require further evaluations and/or treatments by shore side facilities and/or shore side physicians.

47. That even though the Plaintiff complained of headaches, had swollen legs and feet, and continued elevated and "sky high" blood pressure, the ship's medical crew failed and/or refused monitor Plaintiff's blood pressure or timely keep her for observation. That the doctor and the nurse failed to do any detailed examination or evaluation of Plaintiff and failed to advise the Plaintiff that she had a potentially serious injury which required additional tests and treatment off board. That at the time of Plaintiff's injury and Defendant's subsequent care for her, the doctor and nurse failed to administer the proper medication to Plaintiff that would have prevented her on-going medical treatment and ultimate permanent disability.

48. Defendant had, or should have had through the exercise of reasonable care, pre-employment knowledge of its medical personnel's incompetence or unfitness or knowledge to examine, treat, diagnose, and otherwise render proper medical care for the type and severity of Plaintiff's injury and illness.

49. That Defendant breached its duty of care with regard to hiring and/or retention of the ship's doctor and nurse in one or more of the following manner:

(a) that the Defendant negligently failed to conduct an appropriate investigation into the backgrounds of the doctor and nurse to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of hypertensive conditions;

(b) that the Defendant negligently failed to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of hypertensive conditions;

(c) that the Defendant negligently failed to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment that was aboard the vessel, which could have been used for diagnostic testing and evaluation of Plaintiff's injuries;

(d) that the Defendant negligently failed to provide appropriate training and procedures to the doctor and nurse for use of the ship's equipment for diagnostic testing; and,

(e) that the Defendant negligently retained the doctor and nurse without providing appropriate training and procedures for triage and referral to shore side facilities or physicians or consultation.

50. The conduct of Defendant and its agents/employees in the medical care administered to Plaintiff resulting from the hiring, training, and retention of Defendant's medical personnel, or lack thereof, rises to the level gross negligence. Moreover, Defendant actively and knowingly participated in such conduct, the officers, directors or managers of Defendant knowingly condoned, ratified or consented to such conduct and/or Defendant conducted itself in a wanton or outrageous manner. Treatment of a hypertensive emergency via the administration of medications and patient monitoring carried out by Defendants agents/employees was careless and reckless. Defendant should be required to pay punitive damages as a deterrent to any such grossly negligent, wanton, and/or outrageous medical treatment being rendered to future passengers onboard its vessels.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory and punitive damages, including pre-judgment interest, costs, and all damages allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

DATED: November 10, 2016

Respectfully submitted,

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ, LOPATIN & PASCUCCI, LLP**
5400 S. University Drive, Ste. 417

Davie, FL 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
JEggnatz@ELPLawyers.com
MPascucci@ELPLawyers.com

Angela Valentina Arango-Chaffin, Esq.
Fla Bar. No.: 87919
90 Alton Road Ste 2704
Miami FL 33139
713-818-2515
Fax 713-952-5972
angela@chaffinlawfirm.com